# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

CHARLES MOBLEY,

Plaintiff,

v.

WIDER GROUP.

Defendant.

Case No. 19-cv-6755

Judge Mary M. Rowland

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Wider Group, Inc.'s motion to dismiss *pro se* Plaintiff Charles Mobley's complaint. (Dkt. 8). For the reasons stated below, Defendant's motion to dismiss [8] is granted with prejudice.

## BACKGROUND

On September 13, 2019, Mobley filed a complaint against Defendant in the Circuit Court of Cook County. (Dkt. 8, 1). Mobley's complaint seeks damages under a Contractor Equipment Lease Agreement (the "Contract"), which involves motor carrier transportation services in interstate commerce. (*Id.*). The Contract was between Mobley and Defendant, and is governed by Federal Truth-in-Leasing Regulations.[1] 49 U.S.C. § 14704 *et seq*. Defendant timely removed the action to this Court. (*Id.*); 28 U.S.C. §§ 1331, 1404(d)(1), 1441, and 1446.

---

[1] Truth-in-Leasing Regulations regulate leases between independent truckers and federally regulated motor carriers, requiring, among other things that the leases be in writing and specify the duration. 49 U.S.C. § 14704. These regulations protect independent truckers from motor carrier's abusive leasing practices. *See Fox v. TransAm Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016).

1

Defendant is a motor carrier operating under the authority of the Department of Transportation in interstate commerce, and Mobley is an independent contractor. (Dkt. 8, 3). The Contract allowed Mobley to haul loads under the motor authority of the Defendant. (*Id*.). According to Mobley's complaint, on September 11, 2019, Mobley picked up a load and delivered it to Merrillville, Indiana. (Dkt. 1, Ex. 1, 1). After completing that delivery, on September 12, 2019, Mobley received written notice from Defendant that the Contract was immediately terminated. (*Id*.). Mobley states that he was wrongfully terminated because he was terminated "for no reason." (*Id*. at 4). Mobley also claims that the Contract stated he would receive a "weekly gross" of between 6,000 and 7,000.[2] (*Id*. at 1). He alleges that his load volume was irregular and he did not receive the weekly gross of 6,000 or 7,000. (*Id*.).

Mobley's complaint alleges that the Contract was wrongfully terminated and Defendant had not been providing Mobley with adequate volume. There are two Contract provisions at issue: the termination provision and the independent contractor provision. The Contract's termination provision states in relevant part:

> This contract shall become effective at 10 a.m. on the 21 day of May 2019, and shall remain in full force and effect for with [sic] automatic renewal following each delivery of freight and the provision of proof of delivery. The acceptance of a load shall be deemed a renewal of this Agreement by Contractor. This contract may be terminated by either party for any reasons or for no reason at the expiration of the initial or any renewal term by providing twenty-four (24) hours written notice to the other party or by mutual consent. However, Carrier may terminate for cause without notice.

---

[2] Mobley's Complaint does not include any units for these numbers, although the Court assumes the appropriate units are U.S. dollars.

(Dkt. 8, Ex. 3 ¶ 1). The Contract's independent contractor provision states, in relevant part: "Carrier does not warrant any gross revenue from any normal or special routing and/or dispatching as a result of entering into any agreement between Contractor and Carrier." (*Id.* at ¶ 14).

On October 29, 2019, this Court called for a hearing on Defendant's motion to dismiss. (Dkt. 11). Mobley did not appear and did not inform the Court of a conflict. (*Id.*) The Court set a briefing schedule with Mobley's response due on November 11, 2019. (*Id.*) Mobley never filed a response. The Court then closed the case on January 7, 2020 for failure to prosecute the matter (Dkt. 12). A week later, Mobley requested a continuance, which the Court granted (Dkt. 14; Dkt. 15). The Court instructed Mobley to file a response to Defendant's motion to dismiss by February 14, 2020, and admonished Mobley that should he fail to do so, the Court would rule without Mobley's arguments. (Dkt. 15). As of the date of this opinion, Mobley has yet to file a response.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and must "construe the complaint in the 'light most favorable to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)). However, the Court

is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 636 (7th Cir. 2017), *as amended* (Oct. 5, 2017), *cert denied sub nom. Ill. Bible Coll. Ass'n v. Cross*, 138 S. Ct. 1021 (2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate…." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

Defendant argues that Mobley fails to state a claim because the Contract was properly terminated, and the Contract does not provide for weekly gross amounts as Mobley alleged.[3] Regarding termination, the Court agrees with Defendant that the Contract was properly terminated. As noted above, the Contract allowed for

---

[3] With regard to extrinsic evidence, courts normally do not consider such evidence without converting a motion to dismiss into one for summary judgment, however where a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss. *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) ("This rule is a liberal one—especially where…the plaintiff does not contest the validity or authenticity of the extraneous materials."). Here, Mobley's Complaint specifically references the Contract.

4

termination "by either party for any reason or for no reason at the expiration of the initial or any renewal term by providing twenty-four (24) hours written notice to the other party by mutual consent." (Dkt. 8, Ex. 3 ¶ 1). The Contract automatically renews "following each delivery of freight and the provision of proof of delivery. The acceptance of a load shall be deemed a renewal of this Agreement by Contractor." (*Id*.). Thus, pursuant to the Contract, either party could terminate the Contract within twenty-four hours written notice following each delivery of freight. As described above, that is precisely what happened here. Twenty-four hours after Mobley delivered a load on September 11, 2019, Defendant gave Mobley written notice that it was terminating the Contract. Accordingly, the Contract was properly terminated. Mobley has failed to state a claim.

As for load volume, the Contract expressly states that the Carrier does *not* promise any gross revenue: "Carrier does not warrant any gross revenue from any normal or special routing…". (Dkt. 8, Ex. 3 ¶ 14). Despite Mobley's claim in the Complaint that Carrier promises 6,000 to 7,000 per week, the Contract does not actually provide for a weekly load amount at all. There are no other provisions promising a certain amount of revenue, a certain number of routes, a certain number of loads, or a certain weekly wage. Mobley's claim fails.

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion to dismiss [8] with prejudice.

E N T E R:

Dated: March 23, 2020

_____
MARY M. ROWLAND
United States District Judge